(72 Misc. Rep. 243.)

### CITY OF NEW YORK v. BLUM.

(Supreme Court, Special Term, Nassau County. April 25, 1911.)

WATERS AND WATER COURSES (§ 196*)—INJUNCTION—POLLUTION OF WATER SUPPLY.

A city using a pond for many years for supplying its inhabitants with water for drinking purposes is entitled to enjoin defendant from raising ducks on defendant's premises, unless defendant permits certain precautions to prevent the contamination of plaintiff's water supply by such use; defendant's business having been begun only some three years before action brought.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 196.*]

Action by the City of New York against Benjamin Blum for an injunction. Injunction granted on conditions.

Archibald R. Watson, Corp. Counsel (James D. Bell and John B. Shanahan, of counsel), for plaintiff.

John Lyon (Thomas Young, of counsel), for defendant.

JAYCOX, J. The plaintiff is, and has been for many years, the owner of a pond known as "Smith's pond," used for supplying its inhabitants with water for drinking purposes. The defendant owns premises, about 10 acres in extent, upon Pine brook, which empties into Smith's pond. The defendant has owned his premises about three years, and during some portion of that period has been engaged in raising ducks. This business has been carried on upon or by means of ponds upon defendant's premises. At the beginning of the action these ponds were fed by an artificial channel leading from Pine brook. The water was again returned to Pine stream or brook by another artificial channel lower down the stream. Since the commencement of the action, this last-mentioned channel has been closed; and, although there is a perceptible flow from Pine stream into the defendant's ponds, there is no visible flow from these ponds back into Pine stream. The plaintiff seeks to enjoin the raising of ducks upon defendant's premises, unless the defendant shall permit upon his premises certain precautions to prevent the contamination of plaintiff's water supply; the plaintiff claiming that large quantities of duck excreta are carried from defendant's premises into plaintiff's pond from which its water supply is obtained. While some evidence was given upon defendant's behalf, tending to show that colon bacilli is found in the waters of Pine stream above, as well as below, defendant's ponds, I think it cannot be seriously disputed that the result of such duck raising industry at this

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

point is, and will be, to greatly increase the amount of colon bacilli in such waters. For this situation I think the closing of the outlet from defendant's ponds cannot be considered an adequate remedy. More or less of the excreta must escape into the waters of the ponds and sooner or later be conveyed by flood and high water into plaintiff's pond. This leaves the sole question to be determined: Is defendant's use of the premises reasonable? If it is, then, notwithstanding that plaintiff's source of water supply may be polluted to some extent, plaintiff's only remedy is to condemn the premises upon which the contaminating industry is carried on. On the other hand, if such use of defendant's land is not reasonable, then plaintiff is entitled to the relief sought in this action.

The rules governing the rights of riparian owners are very fully laid down by the Court of Appeals in Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643. From the opinion in that case I excerpt the following as particularly applicable to this case:

"A riparian owner is entitled to a reasonable use of the water flowing by his premises in a natural stream, as an incident to his ownership of the soil, and to have it transmitted to him without sensible alteration in quality or unreasonable diminution in quantity. While he does not own the running water, he has the right to a reasonable use of it as it passes by his land. As all other owners upon the same stream have the same right, the right of no one is absolute, but is qualified by the right of the others to have the stream substantially preserved in its natural size, flow, and purity, and to protection against material diversion or pollution. This is the common right of all, which must not be interfered with by any. The use by each must therefore be consistent with the rights of the others, and the maxim of sic utere tuo observed by all. The rule of the ancient common law is still in force; aqua currit et debet currere, ut currere solebat. Consumption by watering cattle, temporary detention by dams in order to run machinery, irrigation when not out of proportion to the size of the stream, and some other familiar uses, although in fact a diversion of the water involving some loss, are not regarded as an unlawful diversion, but are allowed as a necessary incident to the use in order to effect the highest average benefit to all the riparian owners. As the enjoyment of each must be according to his opportunity, and the upper owner has the first chance, the lower owners must submit to such loss as is caused by reasonable use. Surrounding circumstances, such as the size and velocity of the stream, the usage of the country, the extent of the injury, convenience in doing business, and the indispensable public necessity of cities and villages for drainage, are also taken into consideration, so that a use which, under certain circumstances, is held reasonable, under different circumstances would be held unreasonable. It is also material, sometimes, to ascertain which party first erected his works and began to appropriate the water."

The habits of ducks are so well known that the court has no hesitation in finding without proof that they spend a large part of their time in or on the water; and, necessarily, nearly all of their excreta is dropped in the water, thus, it seems to me, rendering them more harmful to the water than any other farmyard fowl or any domestic animal allowed to run at large upon the farm. From the evidence I think it can be fairly assumed that the plaintiff's waterworks were established long before duck raising was begun upon the premises now owned by the defendant. While duck raising is a legitimate business and ordinarily cannot be considered a nuisance, still, under certain surround-

ings and conditions, it would be an undoubted nuisance, the same as slaughterhouses and some other industries which are prohibited in some localities. In this case I am unable to find that the raising of ducks in the manner in which the defendant carries it on is a reasonable use of the stream in question. Under the regulations proposed by plaintiff such use would be reasonable.

That the stream in question is polluted by others is no defense for the defendant. Strobel v. Kerr, supra.

From the case from which I have quoted so liberally it appears that, in an action of this character, and under the circumstances here disclosed, the court can mold its relief to suit the exigencies of the situation. An injunction should issue unless the defendant permits the regulations which plaintiff has suggested.

Let a decree issue accordingly.